IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

ALFRED HENRY                                                                                          PLAINTIFF

v.                                         NO. 4:11CV00449 JLH

JACK FITZHUGH; and TONY WILSON                                                      DEFENDANTS

**OPINION AND ORDER**

Alfred Henry brought claims against Lonoke County Sheriff Jim Roberson, in his official capacity, as well as Deputy Sheriffs Jack Fitzhugh, Tony Wilson, and Steve Finch, pursuant to 42 U.S.C. § 1983, alleging that the defendants violated his Fourth Amendment right to be free from unreasonable searches and seizures. The Court granted the defendants motion for summary judgment as to all of Henry's claims except for his individual capacity claims against Fitzhugh and Wilson. The individual claims against these two officers were tried to a jury, which returned a verdict in favor of Henry. Fitzhugh and Wilson have filed a motion for partial judgment as a matter of law pursuant to Rule 50(b) of the Federal Rules of Civil Procedure, for a partial new trial pursuant to Rule 59, or, alternatively, for remittitur. For the following reasons, the motion is denied.

**I.**

The action arose out of an incident between Wilson and Fitzhugh, Lonoke County Sheriff's Department deputies, and Henry which occurred at his residence on March 31, 2011. At trial, Henry testified that he and his wife, to whom he had been married for thirty-eight years, had gone through a difficult divorce shortly before the March 31 incident. Henry testified that his ex-wife was awarded the majority of the personal property contained in his house. He testified that he was ordered to pay for the costs of loading the personal property and to vacate the premises while the property removed.

He testified that the property to which his ex-wife was entitled was removed on a Saturday well before March 31.

Henry testified that, on March 31, 2011, he was awakened by his intercom system alerting him that someone was ringing his doorbell. He testified that when he answered the intercom, the person at his door identified himself as a sheriff, asked if he was Alfred Henry, and told him that he was in contempt of court. Henry testified that he falsely identified himself as one of his brothers, Gerald Henry. He explained that he had panicked because he thought the person at his door might be his ex-wife's boyfriend. Henry testified that the person at the door told him that he had better not be lying because he was in contempt of court already. He testified that he agreed to come to the door, but then called a different brother, Warren Henry, and asked him to come over. Henry testified that he dressed and went to the front door and was confronted by Wilson. Henry testified that, upon opening the door, his house alarm activated, and so he dashed to the kitchen to deactivate the alarm. Thereupon, according to Henry, he turned to find Wilson standing in his kitchen. Henry affirmed twice during his testimony that he did not invite Wilson into his house. Henry testified that Wilson had some papers in his hands and again told Henry that he was in contempt of court. Henry testified that he told Wilson to leave, but that Wilson refused to do so.

Henry testified that his brother and Fitzhugh arrived thereafter, and that his brother told him that his ex-wife was outside with a moving van. Henry testified that, upon hearing this, he became apoplectic and began to throw a fit, screaming at the officers to get out of his house. Nevertheless, according to Henry, Fitzhugh refused to leave and decided to take photographs of the contents of the house. Henry testified that he objected because he was worried the pictures would be embarrassing given that he was sleeping on the floor in an empty house. He testified that he also felt that the

officers had no right to stay in his house. Henry testified that he told the officers numerous times he wanted them to leave and not take photographs but that the officers refused to listen to him. Nevertheless, according to Henry, the officers disregard his objections and took photographs of the entire inside of his house. Henry's brother confirmed in his testimony that Henry became incensed when the officers said they were going to take photographs. He testified that he grabbed Henry by the arm because "things were getting heated" and he "didn't want any trouble." During cross-examination, Henry conceded that nothing in the photographs negatively affected his divorce proceedings.

At one point during his testimony, Henry stated that many of his neighbors leave for work at about the time that the officers were in his house and that he was concerned about having two patrol cars in his driveway for everyone to see. He also testified that he had been taking medication for depression for about two years prior to the incident, due to the divorce, and that he "didn't need all this stuff." Nevertheless, Henry conceded in his testimony that Wilson and Fitzhugh did not damage or remove anything. He also conceded that the officers did not "cuss" at him or otherwise treat him badly. However, Henry testified that he was extremely indignant and that Fitzhugh also appeared to be getting upset at one point.

Before submitting the case to the jury, the Court instructed the jury regarding Henry's claim that Fitzhugh and Wilson violated his constitutional right to be free from unreasonable searches. Additionally, the Court instructed the jury: "If you find in favor of Alfred Henry, you must award him an amount of money that will fairly compensate him for any damages you find he sustained as a direct result of the defendants' unlawful search." The Court instructed that jury to "consider the mental and emotional suffering that Alfred Henry has experienced." The Court cautioned the jury, however, to

"not engage in speculation, guess, or conjecture," and to "not award any damages . . . by way of punishment or through sympathy." The Court also instructed the jury: "If you find in favor of Alfred Henry, but you find that his damages have no monetary value, then you must return a verdict for him in the nominal amount of One Dollar ($1.00)."

Following deliberations, the jury returned a verdict for Henry in the amount of $25,000. The Court entered judgment on the verdict on April 17, 2012. On May 16, 2012, Fitzhugh and Wilson filed their motion for partial judgment as a matter of law, for a partial new trial on the issue of compensatory damages, or for remittur.

## II.

Henry argues that Fitzhugh and Wilson's motion is untimely and, consequently, barred under the Federal Rules of Civil Procedure. Rule 50(b) of the Federal Rules of Civil Procedure provide that, "[n]o later than 28 days after the entry of judgment," a party "may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59." Rule 59(b) provides that "[a] motion for a new trial must be filed no later than 28 days after the entry of judgment." Similarly, Rule 59(e) provides that "[a] motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." Rule 6(a)(1) provides that, when the Court is computing time period specified in the rules which are stated in days or a longer unit of time, the Court is to exclude the day of the event that triggers the period. However, Rule 6(a)(1) also provides that the Court is to count every day of the period, including intermediate Saturdays, Sundays, and legal holidays, and that the Court is to include the last day of the period.[1] Finally,

---

[1] Rule 6(a)(1) provides a caveat to this rule; namely, that "if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday." This qualification, however, does not apply in this case.

4

Rule 6(b)(2) provides that the Court "must not extend the time to act under Rules 50(b) and (d), 52(b), 59(b), (d), and (e), and 60(b)."

Here, judgment was entered on April 17, 2012. Excluding April 17—that is, counting April 18 as the first day—and counting twenty-eight days brings the date to May 15, 2012. Thus, Fitzhugh and Wilson's motion would have been timely had it been filed by or on May 15. However, the written motion was filed on May 16, 2012. Consequently, it is untimely. Furthermore, pursuant to Rule 6(b)(2), the Court cannot extend the time for filing Fitzhugh and Wilson's motion even if they could offer good cause for the delay. *See also Cavaliere v. Allstate Ins. Co.*, 996 F.2d 1111, 1113 (11th Cir. 1993) (period for serving new trial motions is jurisdictional and cannot be extended in the discretion of the district court). Nonetheless, defense counsel orally moved for a remittitur in open court after the jury was discharged. The Court will therefore address the motion on the merits.

### III.

Assuming *arguendo* that Fitzhugh and Wilson's motion were not barred as untimely, the Court, nevertheless, would deny the motion on the merits. Fitzhugh and Wilson do not challenge the jury's finding that the officers violated Henry's constitutional right to be free from unreasonable searches. Rather, Fitzhugh and Wilson attack the jury's compensatory damages award. First, the officers contend that the evidence at trial did not establish a legally sufficient basis for an award of compensatory damages. Second, the officers argue that, even if Henry suffered some compensable injury, nevertheless the jury's $25,000 award is grossly excessive.

On a motion for judgment as a matter of law, the Court must not set aside the jury's verdict unless, after viewing the evidence in the light most favorable to Henry, it appears that no reasonable jury could have found that Henry suffered a compensable injury, or that a $25,000 award would

appropriately compensate Henry for his injury. *See Heaton v. The Weitz Co., Inc.*, 534 F.3d 882, 887 (8th Cir. 2008). That is, the Court " 'will not set aside a jury verdict unless there is a complete absence of probative facts to support the verdict.' " *Id.* (quoting *Moysis v. DTG Datanet*, 278 F.3d 819, 824 (8th Cir. 2002)).

Regarding the motion for a new trial, the "key question . . . is whether it is necessary to prevent a miscarriage of justice." *Der v. Connolly*, 666 F.3d 1120, 1126 (8th Cir. 2012) (quoting *Haigh v. Gelita USA, Inc.*, 632 F.3d 464, 471 (8th Cir. 2011)). As to Fitzhugh and Wilson's clam that the evidence does not support a compensatory damages award at all, a miscarriage of justice occurs where "the verdict is against the weight of the evidence," *White v. Pence*, 961 F.2d 776, 780 (8th Cir. 1992),[2] or where "there is insufficient evidence to support the verdict[,]" *Douglas Cnty. Bank & Trust Co. v. United Fin. Inc.*, 207 F.3d 473, 478 (8th Cir. 2000). Furthermore, "[a] new trial may not be granted on the grounds that a jury's verdict is excessive unless the court concludes that the jury's verdict is a "plain injustice" or a "monstrous" or "shocking" result." *Stafford v. Neurological Med., Inc.*, 811 F.2d 470, 475 (8th Cir. 1987) (collecting cases).

Similarly, the Court " 'will grant a remitter only in cases where the jury's award is so grossly excessive as to shock the court's conscience.' " *E.E.O.C. v. Convergys Customer Mgmt. Grp., Inc.*, 491 F.3d 790, 797 (8th Cir. 2007) (quoting *Duty v. Norton-Alcoa Proppants*, 293 F.3d 481, 496 (8th Cir. 2002)).

---

[2] However, "[m]otions for new trials based on the weight of the evidence are generally disfavored." *United States v. Campos*, 306 F.3d 577, 579 (8th Cir. 2002). Furthermore, "the district court is not free to reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable." *White*, 961 F.2d at 780 (internal quotations and citations omitted).

In the instant case, the jury was instructed to consider the mental and emotional suffering that Henry had experienced. "Compensatory damages may include not only out-of-pocket loss and other monetary harms, but also such injuries as impairment of reputation, personal humiliation, and mental anguish and suffering." *Coleman v. Rahija*, 114 F.3d 778, 786 (8th Cir. 1997) (citing *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 307, 106 S. Ct. 2537, 2543, 91 L. Ed. 2d 249 (1986)). "Specifically, mental and emotional distress, which include mental suffering and emotional anguish, constitute compensable injury under § 1983." *Coleman*, 114 F.3d at 786 (citing *Carey v. Piphus*, 435 U.S. 247, 264 n.20, 98 S. Ct. 1042, 1052 n.20, 55 L. Ed. 2d 252 (1978)). As to the size of the award, the Court "vest[s] with the jury the responsibility of quantifying emotional damages because the jury has the 'benefit of observation of plaintiff in considering and determining a fair allowance for [his] emotional distress and humiliation.' " *Convergys Customer Mgmt. Grp., Inc.*, 491 F.3d at 797-98 (quoting *Block v. R.H. Macy & Co., Inc.*, 712 F.2d 1241, 1245 (8th Cir. 1983)). "[I]t is well settled that awards for pain and suffering are highly subjective and should be committed to the sound discretion of the jury, especially when the jury is being asked to determine injuries not easily calculated in economic terms." *Convergys Customer Mgmt. Grp., Inc.*, 491 F.3d at 798 (quoting *Frazier v. Iowa Beef Processors, Inc.*, 200 F.3d 1190, 1193 (8th Cir. 2000)).

At trial, Henry offered evidence that Fitzhugh and Wilson came into Henry's home without permission, refused to leave despite Henry's repeated demands that they do so, and decided to take photographs of Henry's home over his repeated objections. Henry testified further that he had recently suffered an acrimonious divorce which had plunged him into depression. Henry testified that Fitzhugh and Wilson's conduct, coupled with the fact that the officers appeared to be acting on behalf of his ex-wife whom he learned was outside his house with a moving van, had upset him so greatly that he was

reduced to screaming at and throwing a fit in front of the two officers. Henry's brother testified that he had to forcibly grab Henry by the arm because Henry was so angry. A jury could reasonably conclude from Henry's brother's testimony that Henry' brother was afraid that Henry might assault the officers. Henry also testified that he was afraid that the photographs taken by Fitzhugh and Wilson might be embarrassing. Additionally, he testified that many of his neighbors leave for work in the morning and that he was upset and embarrassed that two police vehicles were parked in front of his home. Finally, Henry's testimony that he was taking a medication for depression suggests that he was particularly vulnerable to emotional suffering.

Based on this evidence and the fact that the jury was fully instructed as to the law regarding compensatory damages and ordered not to award damages by way of punishment or through sympathy, the Court cannot say that no reasonable jury could find that Henry suffered compensable mental and emotional damages. *See Convergys Customer Mgmt. Grp., Inc.*, 491 F.3d at 797 ("[A] jury may award [emotional distress] damages based solely upon a plaintiff's testimony."). Furthermore, mental and emotional anguish is inherently difficult to express in economic terms and Henry offered evidence tending to show that Fitzhugh and Wilson's conduct caused Henry to suffer emotional distress. In light of the fact that the jury was fully instructed as to the law regarding compensatory damages and ordered not to award damages by way of punishment or through sympathy, the Court cannot say that the jury's $25,000 damages award is unreasonable or monstrous relative to Henry's injuries.

## CONCLUSION

For the foregoing reasons, Jack Fitzhugh and Tony Wilson's Motion for Partial Judgment as a Matter of Law, Partial New Trial, and, Alternatively, Remittur is DENIED. Document #48.

IT IS SO ORDERED this 9th day of July, 2012.

                                                      _____
                                                      J. LEON HOLMES
                                                      UNITED STATES DISTRICT JUDGE